CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Belen Acevedo**, <br><br>          Plaintiff, <br><br>  v. <br><br> **Fred & Robin Rosenberg Family Limited Partnership,** a California Limited Partnership; **Barstow Station Brothers, LLC,** a California Limited Liability Corporation; and Does 1-10, <br><br>          Defendants. | **Case No**. <br><br><br><br><br> **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act. |

Plaintiff Belen Acevedo complains of Fred & Robin Rosenberg Family Limited Partnership; Barstow Station Brothers, LLC; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from multiple sclerosis and uses an electric scooter and walker for mobility.

2. In August 2014, Defendant Fred & Robin Rosenberg Family Limited Partnership was a real property owner of Barstow Station, located at or about

1

Complaint

1611 E. Main St., Barstow, California (hereinafter "Barstow").

3. Currently, Defendant Fred & Robin Rosenberg Family Limited Partnership is a real property owner of Barstow.

4. In August 2014, Defendant Barstow Station Brothers, LLC was a real property owner of Barstow.

5. Currently, Defendant Barstow Station Brothers, LLC is a real property owner of Barstow.

6. In August 2014, Defendant Fred & Robin Rosenberg Family Limited Partnership was a business owner of Barstow.

7. Currently, Defendant Fred & Robin Rosenberg Family Limited Partnership is a business owner of Barstow.

8. In August 2014, Defendant Barstow Station Brothers, LLC was a business owner of Barstow.

9. Currently, Defendant Barstow Station Brothers, LLC is a business owner of Barstow.

10. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

11. This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

12. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

14. Barstow is a facility open to the public, a place of public accommodation, and a business establishment.

15. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Barstow.

16. Unfortunately, the parking lot serving Barstow is not accessible to persons with disabilities.

17. In August 2014, there were 104 parking spaces available to patrons of Barstow.

18. In August 2014, there were no designated accessible parking spaces serving Barstow.

19. In August 2014, there was not a single designated van-accessible parking space serving Barstow.

20. In August 2014, the only accessible parking spaces near Barstow served the adjacent McDonald's and required users to travel across a vehicular drive path to access Barstow.

21. Currently, there are 104 parking spaces available to patrons of Barstow.

22. Currently, there are no designated accessible parking spaces serving

Barstow.

23. Currently, there is not a single designated van-accessible parking space serving Barstow.

24. Currently, the only accessible parking spaces near Barstow serve the adjacent McDonald's and require users to travel across a vehicular drive path to access Barstow.

25. The plaintiff personally encountered these violations and they denied her full and equal access.

26. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Barstow.

27. And, although Plaintiff did not personally confront all of the following barriers, the paths of travel at the entrances leading into Barstow are inaccessible to persons with disabilities.

28. In August 2014, the path of travel at the northeast entrance at Barstow required a person to navigate steps for which there was no ramp.

29. In August 2014, there were unramped steps of more than ½ inch at Barstow's northeast entrance.

30. In August 2014, there was no directional signage posted at Barstow's northeast entrance directing persons with disabilities to an accessible alternate entrance.

31. In August 2014, there was an unramped curb leading to the north entrance at Barstow.

32. In August 2014, the path of travel at the north entrance at Barstow required a person to navigate steps for which there was no ramp.

33. In August 2014, there were unramped steps of more than ½ inch at Barstow's north entrance.

34. In August 2014, there was no directional signage posted at Barstow's north entrance directing persons with disabilities to an accessible alternate

Complaint

entrance.

35. In August 2014, there was an unramped curb in front of the Greyhound bus station window on the north side of Barstow.

36. In August 2014, there was no accessible path of travel leading to the Greyhound bus station window on the north side of Barstow.

37. Currently, the path of travel at the northeast entrance at Barstow requires a person to navigate steps for which there is no ramp.

38. Currently, there are unramped steps of more than ½ inch at Barstow's northeast entrance.

39. Currently, there is no directional signage posted at Barstow's northeast entrance directing persons with disabilities to an accessible alternate entrance.

40. Currently, there is an unramped curb leading to the north entrance at Barstow.

41. Currently, the path of travel at the north entrance at Barstow requires a person to navigate steps for which there is no ramp.

42. Currently, there are unramped steps of more than ½ inch at Barstow's north entrance.

43. Currently, there is no directional signage posted at Barstow's north entrance directing persons with disabilities to an accessible alternate entrance.

44. Currently, there is an unramped curb in front of the Greyhound bus station window on the north side of Barstow.

45. Currently, there is no accessible path of travel leading to the Greyhound bus station window on the north side of Barstow.

46. In August 2014, one of the entrances at Barstow required passage through two doors in a series.

47. In August 2014, these entrance doors required more than 5 lbs. of pressure to open.

48. Currently, one of the entrances at Barstow requires passage through two

Complaint

doors in a series.

49. Currently, these entrance doors require more than 5 lbs. of pressure to open.

50. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of Barstow.

51. And, although Plaintiff did not personally confront all of the following barriers, the restrooms at Barstow are inaccessible to persons with disabilities.

52. In August 2014, there was a women's restroom located near Barstow's northeast entrance.

53. In August 2014, this restroom did not have the International Symbol of Accessibility.

54. In August 2014, this restroom did not have grab bars adjacent to the toilet(s).

55. In August 2014, the highest operable part of the disposable toilet seat cover dispenser in this restroom was greater than 54 inches above the floor.

56. In August 2014, there was no clear floor space in front of the disposable toilet seat cover dispenser in this restroom because it was mounted on the wall behind the toilet.

57. In August 2014, the soap dispenser in this restroom was mounted higher than the 46 maximum inches permitted by law.

58. In August 2014, the mirror in this restroom was mounted on the wall so that its bottom edge was higher than 40 inches above the finish floor.

59. In August 2014, the sink faucet hardware in this restroom was a knob style handle that required tight grasping and twisting of the wrist to operate.

60. In August 2014, the sink in this restroom was a cabinet style sink that did not provide any knee clearance space for wheelchair users.

61. In August 2014, the doorway clear passage width to the toilet stalls in this restroom was less than 32 inches.

Complaint

62. In August 2014, the toilet stalls in this restroom were improperly configured and did not measure at least 60 inches in width and 59 inches in depth.

63. Currently, this restroom does not have the International Symbol of Accessibility.

64. Currently, this restroom does not have grab bars adjacent to the toilet(s).

65. Currently, the highest operable part of the disposable toilet seat cover dispenser in this restroom is greater than 54 inches above the floor.

66. Currently, there is no clear floor space in front of the disposable toilet seat cover dispenser in this restroom because it is mounted on the wall behind the toilet.

67. Currently, the soap dispenser in this restroom is mounted higher than the 46 maximum inches permitted by law.

68. Currently, the mirror in this restroom is mounted on the wall so that its bottom edge is higher than 40 inches above the finish floor.

69. Currently, the sink faucet hardware this restroom is a knob style handle that requires tight grasping and twisting of the wrist to operate.

70. Currently, the sink in this restroom is a cabinet style sink that does not provide any knee clearance space for wheelchair users.

71. Currently, the doorway clear passage width to the toilet stalls this restroom is less than 32 inches.

72. Currently, the toilet stalls this restroom are improperly configured and do not measure at least 60 inches in width and 59 inches in depth.

73. In August 2014, there was a women's restroom located near the north side entrance of Barstow.

74. In August 2014, this restroom did not have the International Symbol of Accessibility.

75. In August 2014, this restroom did not have grab bars adjacent to the

7

Complaint

toilet(s).

76. In August 2014, the highest operable part of the disposable toilet seat cover dispenser in this restroom was greater than 54 inches above the floor.

77. In August 2014, there was no clear floor space in front of the disposable toilet seat cover dispenser in this restroom because it was mounted on the wall behind the toilet.

78. In August 2014, the soap dispenser in this restroom was mounted higher than the 46 maximum inches permitted by law.

79. In August 2014, the mirror in this restroom was mounted on the wall so that its bottom edge was higher than 40 inches above the finish floor.

80. In August 2014, the sink faucet hardware in this restroom was a knob style handle that required tight grasping and twisting of the wrist to operate.

81. In August 2014, the sink in this restroom was a cabinet style sink that did not provide any knee clearance space for wheelchair users.

82. In August 2014, the doorway clear passage width to the toilet stalls in this restroom was less than 32 inches.

83. In August 2014, the toilet stalls in this restroom were improperly configured and did not measure at least 60 inches in width and 59 inches in depth.

84. In August 2014, the toilet stall doors in the women's restroom at Barstow had latches that required tight pinching or twisting of the wrist to operate.

85. Currently, this restroom does not have the International Symbol of Accessibility.

86. Currently, this restroom does not have grab bars adjacent to the toilet(s).

87. Currently, the highest operable part of the disposable toilet seat cover dispenser in this restroom is greater than 54 inches above the floor.

88. Currently, there is no clear floor space in front of the disposable toilet

Complaint

seat cover dispenser in this restroom because it is mounted on the wall behind the toilet.

89. Currently, the soap dispenser in this restroom is mounted higher than the 46 maximum inches permitted by law.

90. Currently, the mirror in this restroom is mounted on the wall so that its bottom edge is higher than 40 inches above the finish floor.

91. Currently, the sink faucet hardware this restroom is a knob style handle that requires tight grasping and twisting of the wrist to operate.

92. Currently, the sink in this restroom is a cabinet style sink that does not provide any knee clearance space for wheelchair users.

93. Currently, the doorway clear passage width to the toilet stalls this restroom is less than 32 inches.

94. Currently, the toilet stalls this restroom are improperly configured and do not measure at least 60 inches in width and 59 inches in depth.

95. Currently, the toilet stall doors in the women's restroom at Barstow has latches that requires tight pinching or twisting of the wrist to operate.

96. The plaintiff personally encountered some of the path of travel and restroom violations and they denied her full and equal access.

97. Additionally, although she did not personally confront the following barriers, Plaintiff alleges that the men's restrooms at Barstow are not accessible to persons with disabilities.

98. In August 2014, this restroom did not have the International Symbol of Accessibility.

99. In August 2014, this restroom did not have grab bars adjacent to the toilet(s).

100. In August 2014, the highest operable part of the disposable toilet seat cover dispenser in this restroom was greater than 54 inches above the floor.

Complaint

101. In August 2014, the mirror in this restroom was mounted on the wall so that its bottom edge was higher than 40 inches above the finish floor.

102. In August 2014, the plumbing underneath the sink in this restroom was not wrapped to protect against burning contact.

103. In August 2014, the sink faucet hardware in this restroom was a knob style handle that required tight grasping and twisting of the wrist to operate.

104. In August 2014, the sink in this restroom was a cabinet style sink that did not provide any knee clearance space for wheelchair users.

105. In August 2014, the doorway clear passage width to the toilet stalls in this restroom was less than 32 inches.

106. In August 2014, the toilet stalls in this restroom were improperly configured and did not measure at least 60 inches in width and 59 inches in depth.

107. In August 2014, the height of the toilets this restroom was not between 17 and 19 inches.

108. In August 2014, the rim of the urinal in this restroom is higher than 17 inches from the floor.

109. Currently, this restroom does not have the International Symbol of Accessibility.

110. Currently, this restroom does not have grab bars adjacent to the toilet(s).

111. Currently, the highest operable part of the disposable toilet seat cover dispenser in this restroom is greater than 54 inches above the floor.

112. Currently, the mirror in this restroom is mounted on the wall so that its bottom edge is higher than 40 inches above the finish floor.

113. Currently, the plumbing underneath the sink in this restroom is not wrapped to protect against burning contact.

Complaint

114. Currently, the sink faucet hardware in this restroom is a knob style handle that requires tight grasping and twisting of the wrist to operate.

115. Currently, the sink in this restroom is a cabinet style sink that does not provide any knee clearance space for wheelchair users.

116. Currently, the doorway clear passage width to the toilet stalls in this restroom is less than 32 inches.

117. Currently, the toilet stalls in this restroom are improperly configured and do not measure at least 60 inches in width and 59 inches in depth.

118. Currently, the height of the toilets this restroom is not between 17 and 19 inches.

119. Currently, the rim of the urinal in the men's restroom at Barstow is higher than 17 inches from the floor.

120. Transaction counters are another one of the facilities, privileges and advantages offered by Defendants to patrons of Barstow.

121. And, although Plaintiff did not personally confront the following barriers, the Greyhound bus station window on the north side of Barstow is inaccessible to wheelchair users.

122. In August 2014, the Greyhound bus station window on the north side of Barstow was more than 36 inches in height.

123. In August 2014, there was no lowered, 36 inch portion of the Greyhound bus station window for use by persons in wheelchairs.

124. Currently, the Greyhound bus station window on the north side of Barstow is more than 36 inches in height.

125. Currently, there is no lowered, 36 inch portion of the Greyhound bus station window for use by persons in wheelchairs.

126. Plaintiff would like to return and patronize Barstow but will be deterred from visiting until the defendants cure the violations.

Complaint

127. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

128. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

129. Given the obvious and blatant violations, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

130. Plaintiff is and has been deterred from returning and patronizing Barstow because of her knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Barstow as a customer once the barriers are removed.

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

131. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

132. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

with disabilities. 42 U.S.C. § 12183(a)(2).

133. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. According to the 1991 Standards, if a parking lot has 101-150 spaces, it must have at least 5 accessible parking spaces. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 101-150 spaces must have at least 5 accessible spaces and 1 of them, or 1 of every 6, must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

134. Here, the failure to provide a single accessible handicap parking space is a violation of the ADA.

135. Here, the failure to provide a single van accessible parking space is a violation of the ADA.

136. Accessible parking spaces serving a particular building must be located on the shortest accessible route of travel from adjacent parking to an accessible entrance. In buildings with multiple accessible entrances with adjacent parking, accessible parking spaces must be dispersed and located closest to the accessible entrances. 1991 Standards § 4.6.2; 2010 Standards § 208.3.1.

137. Here, the only accessible parking serves a different, adjacent business and is thus not so located, in violation of the ADA.

138. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id*. 2010 Standards § 303.4.

Complaint

139. Here, unramped steps at the entrances is a violation of the ADA.

140. The maximum force required to push or pull open a hinged, exterior door cannot exceed 5lbs. CBC § 1133B.2.5.

141. Here, the failure of the defendants to maintain or provide accessible exterior doors is a violation of the ADA.

142. Where toilet rooms are provided, each toilet room shall comply with 2010 Standards § 603. 2010 Standards § 213.2.

143. Here, there was no accessible restroom, in violation of the ADA.

144. Where existing toilet rooms or bathing rooms do not comply with 2010 Standards § 603, directional signs indicating the location of the nearest toilet room or bathing room complying with 2010 Standards § 603 within the facility shall be provided. Signs shall comply with 2010 Standards § 703.5 and shall include the International Symbol of Accessibility complying with 2010 Standards § 703.7.2.1.

145. Here, there was no directional signage indicating the route to the nearest compliant restroom, in violation of the ADA.

146. Where existing toilet rooms or bathing rooms do not comply with 2010 Standards § 603, the toilet rooms or bathing rooms complying with 2010 Standards § 603 shall be identified by the International Symbol of Accessibility complying with 703.7.2.1.

147. Here, there was no International Symbol of Accessibility in violation of the ADA.

148. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

149. Here, the failure to provide compliant grab bars is a violation of the ADA.

150. If controls, dispensers, receptacles or other equipment is

Complaint

provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

151. Here, the failure to ensure that the toilet seat cover dispenser met the height requirement is a violation of the ADA.

152. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

153. Here, the failure to provide such floor space for the toilet seat cover dispenser is a violation of the ADA.

154. Where parallel approach by a person in a wheelchair to a wall mounted accessory is available but requires reaching over an obstruction, the maximum high side reach allowed is 46 inches. 1991 Standards § 4.2.6 & Fig. 6(c); 2010 Standards § 308.3.2.

155. Here, the soap dispenser is mounted higher than the 46 maximum inches permitted by law.

156. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

157. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

158. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

159. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

160. Sink hardware must have a shape that is easy to grasp with one

Complaint

hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.24.7 and 4.27.4.

161. Here the failure to provide such sink hardware is a violation of the ADA.

162. Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

163. Here, no such knee clearance was provided and this is a violation of the ADA.

164. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

165. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

166. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

167. Here, the failure to provide accessible restroom door hardware is a violation of the ADA.

168. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide

Complaint

front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

169. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

170. The height of toilets must be from 17 inches to 19 inches, measured to the top of the toilet seat.

171. Here the toilet seats are too low and do not comply with the ADA.

172. Urinals shall be the stall-type or the wall-hung type with the rim 17 inches maximum above the finish floor or ground. 2010 Standards § 605.2; Figure 605.2.

173. Here, the failure to provide accessible urinals is a violation of the ADA.

174. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

175. Here, no such accessible transaction counter or a lowered, 36-inch counter has been provided at Greyhound, in violation of the ADA.

176. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

Complaint

177. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

178. Given its location and options, Barstow is a business that the plaintiff will continue to desire to patronize, but she has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

179. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

180. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

181. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

Complaint

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 10, 2016          CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint